[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11806
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00266-HLM

GREATER COMMUNITY BANCSHARES, INC.,
f.k.a. Greater Rome Bancshares, Inc.,
GREATER COMMUNITY BANK,
f.k.a. Greater Rome Bank,

                                Plaintiffs - Appellants,

versus

FEDERAL INSURANCE COMPANY,

                                Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 18, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

In this insurance coverage case, Plaintiffs Greater Community Bancshares, Inc. and Greater Community Bank (collectively "GCB") appeal the district court's grant of summary judgment in favor of the Defendant Federal Insurance Company ("Federal Insurance"). After review, we affirm.[1]

## I. BACKGROUND FACTS

**A.   Insurance Policy**

In 2008, GCB obtained a banker's professional liability policy from Federal Insurance covering any claim by a customer for a wrongful act while performing "Professional Services." The policy required Federal Insurance to defend any claim covered under the policy, even if any of the allegations were groundless, false or fraudulent.

Relevant to this appeal, an amendment to the policy defined "Professional Services" to mean "Lending Services."[2] And "Lending Services" was then defined as "any act performed by an Insured for a Lending Customer of [GCB] in the course of extending or refusing to extend credit or granting or refusing to grant a loan or any transaction in the nature of a loan, including any act of restructure,

---

[1] We review the grant of summary judgment, as well as the interpretation of an insurance contract, de novo. See James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008). In this diversity case, Georgia law governs as to the insurance policy. See Dempsey v. Auto Owners Ins. Co., 717 F.2d 556, 559 (11th Cir. 1983).

[2] The policy's definition of "Professional Services" also included "Loan Servicing," but on appeal, GCB does not argue that its claim to Federal Insurance satisfied this part of the definition.

2

termination, transfer, repossession or foreclosure."  A lending customer was a "person or entity" to whom "an extension of credit, an agreement to extend credit, or a refusal to extend credit was made or negotiated on behalf of" GCB.

**B.     Underlying Bankruptcy Adversary Complaint**

In 2010, GCB was named as a defendant in an adversary proceeding filed in the U.S. Bankruptcy Court in the District of Idaho.  In the Chapter 7 bankruptcy adversary proceeding, the trustee for Payroll America Inc. ("Payroll America") sued GCB.

According to the adversary complaint, Payroll America contracted with one of GCB's bank account holders, Lori Duke d/b/a Data Processing Services ("DPS"), to complete certain payroll transactions, such as withholding taxes and then depositing those tax withholdings with the appropriate government agency. Using the Automated Clearing House ("ACH") network and the Federal Reserve banking system, DPS collected funds from Payroll America's client accounts and transferred them to the relevant taxing authority.  Pursuant to a written agreement, GCB, the "Sending Bank," allowed DPS, as the "Third-Party Sender," to use GCB's Originating Depository Financial Institution routing number to obtain direct access to the Federal Reserve Bank in Atlanta and perform these payroll functions.

The bankruptcy trustee's initial complaint sought only an accounting, but subsequent amendments added claims of fraudulent transfers by Payroll America

3

through GCB's bank.  Specifically, the trustee's second amended complaint alleged that Payroll America had operated a fraudulent scheme similar to a Ponzi scheme that robbed "Peter to pay Paul," and had used DPS's money transfers made through GCB's bank to hide Payroll America's insolvency and defraud its creditors.  The trustee's second amended complaint alleged that these money transfers made at Payroll America's instruction were fraudulent transactions under federal and Idaho and Georgia law, that GCB and DPS knew or should have known the transfers were fraudulent, and that GCB was liable for DPS's actions because they were engaged in an agency relationship or a joint venture.

The trustee's second amended complaint also alleged that when Payroll America had "insufficient funds" for some of these ACH money transfers, GCB "paid out" those funds on Payroll America's behalf, obligating Payroll America to repay GCB for the "advance."  DPS, on GCB's behalf, then demanded "repayment" from Payroll America to satisfy the "obligation," which Payroll America did with commingled funds.  The second amended complaint alleged that when these insufficient-funds transfers occurred, GCB knew or should have known that Payroll America "was incurring debt to" GCB.  The second amended complaint sought, among other things, to recover the full amount of the money transfers from GCB and DPS.

**C.     Defendant Federal Insurance's Refusal to Defend**

Based on the bankruptcy trustee's initial complaint for an accounting, GCB filed a claim with Federal Insurance. Federal Insurance denied coverage and refused to defend GCB.

After the bankruptcy trustee amended the complaint to allege the fraudulent transfer claims, GCB resubmitted its claim to Federal Insurance. Federal Insurance again denied coverage and refused to defend on the basis that the trustee and Payroll America were not GCB's customers and because the factual allegations in the bankruptcy trustee's second amended complaint did not involve professional services, i.e., loan servicing or lending services, as defined in the policy.

GCB defended itself in the bankruptcy-adversary proceedings, ultimately winning summary judgment. In opposing summary judgment, the bankruptcy trustee (orally and in writing) argued unsuccessfully that Payroll America was a customer of GCB and that when DPS's debit transactions on behalf of Payroll America failed and GCB temporarily covered the shortfall, Payroll America briefly owed GCB a debt, which it then repaid through DPS.[3] On appeal to the district court, the bankruptcy trustee renewed this argument, claiming that Payroll America in effect obtained "short-term loans" from GCB. The district court affirmed the

---

[3] The trustee made this argument to try to persuade the bankruptcy court that GCB was liable for Payroll America's fraudulent transfers under 11 U.S.C. § 550(a)(1) as an "entity for whose benefit" the transfers were made. The trustee contended that some of Payroll America's fraudulent wire transfers to DPS, as a third party, were in exchange for DPS's payment of Payroll America's short-term debt to GCB and thus were "for the benefit of" GCB.

5

grant of summary judgment, rejecting, <u>inter alia</u>, the bankruptcy trustee's theory that GCB lent money to Payroll America.[4]

**D.   Breach of Contract Action**

Plaintiff GCB filed this diversity action against Defendant Federal Insurance, alleging a breach of its insurance contract under Georgia law.  The district court granted Federal Insurance's motion to dismiss GCB's amended complaint because the underlying fraud claims in the bankruptcy-adversary proceeding did not fall, or even arguably fall, within the policy's coverage.  The district court concluded that the bankruptcy trustee's second amended complaint contained no allegations of loan servicing or lending services as defined in the policy, and GCB did not claim that it "in fact gave loans to" Payroll America.  The district court looked to the pleadings—the second amended complaint—and explained that it would not consider the bankruptcy trustee's later arguments to the bankruptcy court and on appeal about short-term loans because GCB did "not claim that [Payroll America] was in fact a customer of [GCB] or that a loan agreement existed between [Payroll America] and [GCB]."  The district court

---

[4]When this breach of contract action was filed, an appeal of the district court's order affirming summary judgment was pending in the Ninth Circuit.  The Ninth Circuit recently affirmed and, like the bankruptcy court and the district court before it, rejected the bankruptcy trustee's argument that some of the DPS money transfers (called cure wires) were to repay a debt to GCB.  See <u>In re: Payroll Am., Inc.</u>, No. 13-35903, 2015 WL 4123469 (9th Cir. July 9, 2015).

dismissed GCB's amended complaint without prejudice and denied without prejudice GCB's pending motion for leave to file a second amended complaint.

GCB filed a motion for reconsideration, arguing that the district court had not addressed the bankruptcy trustee's allegations that Payroll America owed GCB a debt.  The district court denied the motion.  The district court explained that none of the second amended complaint's factual allegations indicated that Payroll America's "debt" to GCB "could reasonably be understood as a loan or extension of credit: there is no claim of a loan agreement, an interest [r]ate, or even a due date.  Plaintiffs have not provided any evidence suggesting that a reasonable insured bank would have believed that it was engaged in either Loan Servicing or Lending Services, as defined by the Policy, when it processed ACH transactions.  In fact, it is clear that Plaintiffs knew that they did not provide Professional Services to [Payroll America]."  (footnote omitted). The district court denied GCB's motion for leave to file a second motion for reconsideration.

## II. DISCUSSION

Under Georgia law, an insurer's duty to defend is determined by comparing the language of the policy with the allegations in the underlying complaint against the insured.  Hoover v. Maxum Indem. Co., 291 Ga. 402, 407-08 (2012).  The ordinary rules of contract construction apply to insurance contracts, and policy terms are given their ordinary and common meaning unless otherwise defined in

7

the contract. Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 269 Ga. 326, 327-28 (1998). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." Hoover, 291 Ga. at 408 (quotation marks omitted).

Where the policy requires the insurer to defend groundless, false, or fraudulent claims, "the insurer has a duty to defend even where the complaint against the insured sets forth false factual allegations which would bring the claim within the coverage of the policy." Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc., 268 Ga. 564, 564 (1997). Moreover, "in making a determination of whether to provide a defense, the insurer is entitled to base its decision on the complaint and the facts presented by its insured." Colonial Oil Indus., Inc. v. Underwriters Subscribing to Policy Nos. TO31504670 and TO31504671, 268 Ga. 561, 562 (1997). For this reason, the insurer has a duty to defend even where "the complaint against the insured falsely indicates non-coverage" but the insurer knows of or can ascertain "true facts showing coverage." Penn-Am., 268 Ga. at 565 (citing Loftin v. United States Fire Ins. Co., 106 Ga. App. 287, 294-97 (1962)). Likewise, the insurer has a duty to defend where "the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage." Id. "Thus, it is only where the complaint sets forth true factual allegations showing no coverage that the suit is one for which liability coverage is

not afforded and for which the insurer need not provide a defense." Id. (citing Great Am. Ins. Co. v. McKemie, 244 Ga. 84, 85 (1979), and Loftin, 106 Ga. App. at 291).

Here, the bankruptcy trustee's second amended complaint alleged that Payroll America conducted a Ponzi-like scheme using ACH money transfers it instructed DPS to make through GCB as the "Sending Bank." During this process, GCB sometimes briefly covered Payroll America's shortfalls due to differences between ACH debits and credits or to insufficient funds, which Payroll America then repaid.

We agree with the district court that, when read in context, the debt allegations in the second amended complaint do not refer to the kind of activities that constitute "Lending Services," as defined in the policy  The terms "loan" and "extension of credit" do not appear in the second amended complaint. The term "debt" does appear in the second amended complaint, as do the terms "advance" and "obligation." However, none of the factual allegations suggest that the kind of "debt" Payroll America was alleged to have briefly incurred when it initiated ACH money transfers involved a "loan" or an "extension of credit" by GCB to Payroll America. As the district court explained, there are no allegations of a loan agreement, an interest rate, or a term, or any other indications of a conventional bank "loan" or "extension of credit." As the district court further noted, the "debt"

as alleged appears at most to be some form of overdraft protection, rather than a loan.[5]  In any event, GCB's alleged role as the "Sending Bank" in Payroll America's ACH money transfers was not a "loan" or the "extension of credit" as those terms are commonly understood.

Moreover, GCB agrees that in fact Payroll America was never GCB's customer and that GCB did not give a loan or extend credit to Payroll America.[6]  In fact, GCB has repeatedly prevailed on this point in the underlying bankruptcy litigation.  In other words, GCB's claim as alleged did not show coverage, and the "true facts" confirm that the claim was not covered.  Under such circumstances, Georgia law does not require the insurer to defend against the claim.

For these reasons, we affirm the district court's order granting summary judgment to Federal Insurance.  GCB's request to certify a question to the Georgia Supreme Court is denied.

**AFFIRMED.**

---

[5] GBC's reliance on Synovus Bank v. Griner, 321 Ga. App. 359 (2013), is misplaced. Griner addressed only whether bank overdraft fees constituted interest for purposes of Georgia's usury laws. See id. at 367-69.

[6] For this reason, the district court also correctly concluded that the bankruptcy trustee's subsequent legal arguments in opposing, and then appealing, summary judgment do not determine coverage.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Douglas J. Mincher
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 18, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-11806-DD
Case Style: Greater Community Bancshares,, et al v. Federal Insurance Company
District Court Docket No: 4:14-cv-00266-HLM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Elora Jackson, DD at (404) 335-6173.

Sincerely,

DOUGLAS J. MINCHER, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs